## Doe *ex dem.* Starke *v.* Gildart and Morris.

A. had a decree in chancery to recover of B & C, the heirs of F, a certain sum of money to be levied of the goods and chattels, lands and tenements of which F died possessed, on which decree there was issued an execution commanding the sheriff to levy the same of the goods and chattels, lands and tenements of B & C, or of the goods and chattels, lands and tenements of which F died possessed. A. became the purchaser of lands sold by the sheriff under the decree and execution; held, that the title of the vendee was good, inasmuch as the variance between the execution and the decree did not render the execution void, but only voidable; and a transcript of the decree and execution, as well as the sheriff's deed, were admitted in evidence to show title in an action of ejectment by A to recover the land.

Where it becomes necessary to read in evidence on a trial at law, the proceedings in a suit in chancery, the decree will be sufficient, without a transcript of the whole record.

(Semble) where there is sufficient on the face of the judgment to support the execution, it seems a transcript of the judgment is all that is requisite.

IN error to the circuit court of the county of Wilkinson.

Winchester for plaintiff in error, cited 5 Johnson's Reports, 99; 11 Mass. 89; 1 Cowen's Rep. 313; 16 J. R. 574.

Montgomery *contra*, cited 2 Caine's Reports, 61; 3 Bacon 419, 420; 12 J. R. 213; 13 J. R. 97.

Mr. Chief Justice SHARKEY delivered the opinion of the court, which contains a sufficient statement of the case.

This was an action of ejectment instituted in the circuit court of Wilkinson county. As evidence of title the lessor of the plaintiff introduced on the trial a decree in his favor, rendered by this court against John W. Gildart, Francis Gildart and others, which was read without objection. He then offered to read a certified transcript of the same decree and the execution thereon, issued from the superior court of chancery, both certified by the clerk of that court; and also a deed from the sheriff of Wilkinson county for the land in question, which had been sold by the sheriff under the execution. The defendants objected to the admission of the certified transcript of the decree and execution, and also to the admission of the deed, and the objection being sustained by the court, the plaintiff took his exception, and the case comes up by appeal.

The error assigned is general, that the court erred in sustaining the objection and ruling out the evidence. The particular grounds of objection to this documentary testimony are said to have been, first, for a variance between the decree and execution, and second because the decree alone was produced and not the whole record. It becomes necessary to enquire whether the first objection was well taken, and if it was, what is the effect of the variance on the rights of the parties to the present controversy.

I entertain no doubt but what the variance exists. The decree is altogether intelligible, free from any obscurity, and not, as the counsel insisted, of doubtful import. The language employed, so far as it is material to consider of it, is this; " that said Theodore Starke, the appellee, do have and recover of and from the said John W. Gildart, Francis Gildart, John B. Fox and Sophia his wife, Lemuel Pitcher and Mary Jane his wife, Dick H. Eggleston and Elizabeth his wife, Moses Liddell, guardian of Francis G. Ruffin, and Dick H. Eggleston, administrator *of Horatio N. Gild*art, deceased, the sum of nineteen thousand five hundred and fourteen dollars and twenty eight cents, being the amount of the judgment and interest of the county and probate court of Adams county, from the September term of said county and probate court, in the year one thousand eight hundred and twenty-six, *until the* twentieth day of February in the year of our Lord one thousand eight hundred and thirty-six, being the date of this decree. It is further ordered, adjudged and decreed, that said sum of nineteen thousand five hundred and fourteen dollars and twenty eight cents, be levied and collected from and out of the goods and chattels, lands and tenements of which the said Francis Gildart died seised and possessed." Strip it of what is really but surplusage, and without doing any violence to the true sense and meaning of the decree, it may be read thus:—" It is ordered, adjudged and decreed, that said Starke do have and recover from said John W. Gildart, &c. (naming the other defendants,) the sum of $19,514 28, to be levied of the goods and chattels, lands and tenements of which Francis Gildart died seised and possessed."

That portion of the decree directing the levy on the property of Francis Gildart, is not an enlargement, but a restriction, pointing to the only property out of which the debt was to be levied, and

no part of the decree will justify a *fieri facias de bonis propriis*. How is the execution? It is in the alternative, as follows: " We command you that of the goods and chattels, lands and tenements of John W. Gildart, and the other defendants, (naming them,) or of the goods and chattels, lands and tenements of which Francis Gildart died seised and possessed, you cause to be made," &c. This execution would justify a levy on either the individual property of the defendants, or on the property of Francis Gildart, and in this respect it departs from the decree; but did this variance vitiate the sale, or justify the ruling out of the execution, as a matter of evidence? It did not, unless the execution was void.

The law is well settled by an unbroken chain of adjudicated cases, that a mere irregularity, for which an execution would be voidable merely, does not affect the right of a purchaser under it. This doctrine was recognized by this court in the case of Snyder *v.* Vancampen, decided at the last term. The variance cannot be regarded as any thing more than an irregularity, for which the execution would be voidable, and might be set aside on application of the defendants. There was a good judgment to support it, and it was an authority to do all that the decree had authorised. That it authorised a levy on the individual property of the defendants, was evidently a clerical mistake, arising no doubt from a misconstruction of the decree. On the application of the plaintiff it might have been amended to conform to the decree. 5 J. R. 100. 1 Cowen, 313. It is admitted that a sale under a voidable execution does not affect the right of the vendee, if he be a stranger to the judgment and execution, and purchase *without notice of a defect*; but it is said that the rule cannot apply to Starke, who was plaintiff in the execution, and therefore bound to know of the defects, and in support of this position the case of Simonds *v.* Catlin, 2 Caine's Rep. 61, is relied on.

In that case it was held that the plaintiff, who was the attorney in the original suit, was properly chargeable with notice of every irregularity attending the execution, but there is a material distinction between that case and the one at bar. There a motion was made after verdict in ejectment to set it aside. " 1. Because a *fieri facias* issuing into a different county than that in which the venue is laid, without a *testatum*, is void." The court sus-

23*

tained the motion for this and another reason, for both of which the execution was not voidable merely, but void, and was therefore improper evidence. A party to a void process, could acquire no title under it, and this seems to be the reason of the case. Starke's execution was at most only voidable, and did therefore give title to the vendee under it. Even if it could have been set aside on the application of the defendants, they have not thought proper to have this done, and being only voidable, while it is permitted to remain in force, it must have the effect of a regular execution. No person can have a right to question it, but the parties, and they must do it directly and not collaterally. 1 Cowen, 313; 16 J. R. 574, Jackson *v.* Robbins.

The language of Chancellor Kent, in the last case cited, may, with great propriety, be applied in the case before us. In regard to an execution which was irregularly issued, he says, " in the first place, the better opinion is, that if execution had been issued without *scire facias,* the sale under it would not have been void. It might have been voidable, and liable to have been set aside by the Supreme Court upon motion as irregular, or by this court upon error as erroneous, but until that was done the title would have stood. This question of irregularity or error never can be discussed collaterally in another suit. It is not a point in issue in this action of ejectment." The opinion from which this language was extracted was delivered in the court for the correction of errors, and it may be presumed that every point was fully investigated.

Let it be supposed, then, that Starke was a purchaser with notice ; of what had he notice ? of a mere variance which he could have amended, and which did not vitiate the execution,— but at best only furnished a ground for setting it aside by the direct application of those who were interested. It could not be questioned collaterally. The case would have been different, if it had been void. That which is void is essentially inoperative from the beginning, and can have no binding quality. We therefore think that the condition of Starke was not materially different from that of a stranger, and that the variance between the decree and execution did not justify the ruling of them out.

The other ground taken in support of the judgment below was

[Doe *ex dem.* Starke *v.* Gildart and Morris.]

that the decree alone, and not the whole record, was produced as evidence. It may be considered as the settled law, that a claimant under a sheriff's sale must produce the judgment and the execution. What are we to understand from the authorities when they say that the judgment must be produced? Do they mean an exemplification of the whole record, or the judgment merely? The question may be readily solved by an inquiry into the reason of the rule. A judgment imports verity. It is conclusive in its character, and admits of no question. An execution has none of these attributes. It is merely the authority or warrant for enforcing the judgment. Its force depends upon the existence of a judgment. Without a judgment to support it, it is void. As its efficacy must depend upon a judgment, the judgment can only be required for the purpose of proving the legal existence of the execution. It can be required for no other purpose, for if the judgment be ever so irregular, its imperfections cannot be attacked collaterally. It can be of no use, therefore, to produce the whole record, and the law does not require that to be done which is useless. If there be enough, therefore, on the face of the judgment to support the execution, it must be all that the law requires. The decree in this case shows all that could be required. The parties were in court, and the subject matter was within the jurisdiction of the court, and a final decree was made.

In most of the authorities, it is not altogether clear whether the judgment only is deemed sufficient, or whether the whole record should be produced. Independent of the manifest reason of the case, however, we have our authority directly in point, which is decisive of the question. It is the case of Lowry & Harris *v.* McDermott, *5* Yerger's Rep. *225.* Land was sold under a decree of the court of chancery. The vendee brought ejectment for the premises, and introduced the decree, to which there was an objection, because the bill and answer were not also produced, and it was held by the court that the decree alone was sufficient. If this was the ground on which the decree was ruled out, the court erred.

The judgment must be reversed, the cause remanded, and *venire de novo* awarded.